CENTRAL TRUST Co. and another *v.* WABASH, ST. L. & P. R. Co.
and others.[1]

WABASH, ST. L. & P. R. Co. *v.* CENTRAL TRUST Co. and others.[1]

*(Circuit Court, E. D. Missouri.* April 28, 1885.)

1. EQUITY PRACTICE—INTERVENTION—SUIT TO HAVE GUARANTY ANNULLED.

A., a railroad company, having joined in the execution of a mortgage from B. to C., to secure the payment of bonds issued by B., and having guarantied the payment of said bonds, and 2,700 of said bonds being in the hands of a special receiver of this court appointed in the above-entitled case, and A. being under the control of the parties by whose privity said mortgage and guaranty were procured, D., a stockholder in A., asks leave to intervene here, or sue, in some other court having jurisdiction, said receiver, and the parties by whose privity said mortgage and guaranty were procured to be executed, for the purpose of having said guaranty, etc., annulled, and the further negotiation of said bonds enjoined, etc., on the ground that the execution of said mortgage and guaranty by A. was *ultra vires* and illegal, and authorized by a board of directors not legally elected. *Held,* (1) that said receiver is a proper party to a suit for the purposes aforesaid, to the extent, and only to the extent, of his interest in said bonds; (2) that this court will not permit said receiver to be sued outside of its jurisdiction; (3) that the petitioner may intervene upon showing that A. will not move in the matter.

2. CORPORATIONS—ACTS OF DE FACTO BOARD.

*Semble,* that the acts of a *de facto* board of directors are valid, whether all the members of the board are eligible and have been legally elected or not.

Consolidated Cases. In equity.

Application of Henry B. Plant for leave to sue the receiver.

The petitioner states that he is a stockholder in the St. Louis, Iron Mountain & Southern Railroad Company, and has lately been advised of the terms and conditions of a lease by the Wabash, St. Louis & Pacific Railroad Company of its property to the St. Louis, Iron Mountain & Southern Railroad Company, and of the existence, terms, and conditions of a certain paper purporting to be a mortgage of the Wabash Company's property to the Mercantile Trust Company, and to be executed by the said St. Louis, Iron Mountain & Southern Railroad Company, as party of the third part, to secure $10,000,000 of bonds executed by said mortgagor, and the payment of the principal and interest of which purport to be guarantied by the said St. Louis, Iron Mountain & Southern Railroad Company; that as such shareholder he desires to institute the proper legal proceedings in this court, by intervening herein, or in some other court having jurisdiction of the subject-matter and the parties, against all the parties to said lease, mortgage, and guaranty, and against the persons by whose privity the same were procured to be executed, for the purpose of having the same and each thereof judicially annulled, and further proceedings thereunder or any negotiations thereof enjoined, and to recover from such persons individually the moneys which your petitioner believes were by them mis-

---

[1]Reported by Benj. F. Rex, Esq., of the St. Louis bar.

appropriated thereunder; and that said persons are some of them citizens of New York, one of Massachusetts, and one of Missouri, and were all directors of both said Wabash Railway and the said St. Louis, Iron Mountain & Southern Railroad Company at the time said instruments were executed; and that the grounds for such proposed proceedings are that the board of directors of the St. Louis, Iron Mountain & Southern Railroad Company, by which such proceedings purport to have been authorized, executed, and delivered, were never legally elected by the stockholders thereof; and that several of the directors were not eligible, under the laws of Missouri, to the offices which they assumed to occupy; and that said lease, and the said guaranty are voidable, because attempts to secure the consolidation of the two railways aforesaid, were contrary to the laws of Missouri; that said guaranty was *ultra vires;* and that the said St. Louis, Iron Mountain & Southern Railroad Company is now under the absolute control and in the sole possession of the parties whom the petitioner desires to sue, and others acting in concert with them.

*Dyer, Lee & Ellis, J. B. Henderson, James M. Lewis,* and *T. K. S. Skinker,* for petitioner.

*Wager Swayne, Henry T. Kent,* and *Greene, Burnett & Humphrey,* for the Wabash.

*Phillip & Stewart,* for the Central Trust Company.

*Wells H. Blodgett,* for receiver.

TREAT, J., (*orally.*) An application was made by Henry B. Plant some time ago to permit the receivers of the Wabash system to be made parties to one or more suits that he desired to institute in some other judicial tribunal. At the time the matter was presented to me, being here alone, I suggested that it should be heard before a full bench. The difficulties presented originally occurred to my brother judge and myself. Mr. Plant is an individual stockholder in the Iron Mountain road. He asks, as an individual stockholder, to institute a suit, instead of the corporation's attending to its own business, without conforming to the rule which I recognize as the original equity rule, and which has been emphasized by a written rule of the supreme court of the United States. Why should one stockholder undertake to perform the functions of a corporation? There may be reasons for his so doing. Possibly there were in this case. But whether so or not, it is unnecessary now to determine.

The original application has been so far modified as to ask permission to sue the special receiver, who has in custody 2,700 collateral bonds as a guaranty for certain indorsements made to help out this concern before the appointment of a receiver. There are a great many matters stated in that application with which this court has nothing to do; certainly not in the present aspect of the case, and probably in no conceivable aspect of the case. The enforcement by the state of its prerogatives by ousters and forfeitures belong to it, and not to this tribunal. We treat the corporation named, to-wit, the

Iron Mountain Railroad corporation, as an existing corporation. We treat its action through its duly-constituted officers as the action of a *de facto* board, and it does not become this court to go into an inquiry as to the validity of those matters which are before us for consideration by an attempted exercise of mere state authority. The charter is good until the state chooses to forfeit it, and these directors are duly elected unless in consequence of some provision of the statute they should be ousted. Behind all that, however, is the important question here.

Of course, this court will not permit its receiver, he not being a necessary party, nor even a proper party, to any such proceeding, elsewhere to be involved in that litigation with which he has nothing to do, and thus tie up this whole receivership for an indefinite period of time. Yet there is one, and only one, aspect of the case in which the special receiver should be a party, to-wit: Are the guaranties made by the Iron Mountain Company on the 2,700 bonds, now in the hands of the special receiver, valid? To that extent, and to that alone, would the receiver be a proper party to the proceeding. It might originally have been supposed that the lease made to the Iron Mountain Company, this party stockholder wished to invalidate. But that lease has ceased to exist. One of the original orders of this court in respect thereto was that the Iron Mountain Railroad Company should surrender that lease, and it has done it. Hence all that Mr. Plant wants in that direction has been accomplished by this court. Now he asks that our receivers shall go into other courts to have the question determined whether the guaranty of those bonds is valid or invalid. This court considers itself perfectly competent to pass upon that question. It is a necessary part of the controversy before this court. This court will determine it, and will not remit it to other tribunals; for if other tribunals should happen to decide differently from what this court might think correct, a strange question would be presented as to conflicting authority.

It suffices as far as Mr. Plant is concerned, if he wishes to raise that question he can intervene here, on showing that the corporation will not do what he wants; but why send the corporation to New York or to California to do the work which this court ought to do?

The motion will be denied.